Ronald GROSSHEIM; Ann Grossheim, Plaintiffs–Appellants,

ANR Freight System, Inc., Intervening Plaintiff,

v.

FREIGHTLINER CORPORATION, a Delaware corporation, Defendant–Appellee.

No. 91–1255.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 18, 1991.

Decided Sept. 10, 1992.

George T. Fishback (argued and briefed), Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman, Detroit, Mich., for plaintiffs-appellants.

Lance R. Mather and David N. Campos, Smith, Haughey, Rice & Roegge, Grand Rapids, Mich., for intervenor.

Cheryl A. Bush (briefed) and Dennis M. Haffey (argued), Dykema & Gossett, Detroit, Mich., for defendant-appellee.

Before: NELSON and SUHRHEINRICH, Circuit Judges; and ENGEL, Senior Circuit Judge.

ENGEL, Senior Circuit Judge.

The principal issue in this appeal is whether the trial judge abused his discretion in declaring a mistrial after one juror of a six juror panel, upon examination by the judge, revoked her assent to the verdict announced by the foreperson.

Ronald Grossheim and his wife Ann brought this Michigan diversity action in the United States District Court for the Western District of Michigan alleging that defendant Freightliner Corporation's negligence and defective design of a climbing system caused serious personal injuries to Mr. Grossheim when he slipped and fell from a truck cab manufactured by Freightliner. The matter came on for trial and after six days of testimony and two and one-half days of jury deliberations, the jury returned a verdict in favor of plaintiffs, finding damages suffered by Mr. Grossheim in the amount of $1,625,000.00 and by Mrs. Grossheim in the amount of $375,-000.00. The jury then discounted those damages by sixty percent to reflect Mr. Grossheim's contributory negligence, resulting in a total verdict for the Grossheims in the amount of $800,000. However, uncertainty regarding the jury's unanimity in the verdict prompted the trial judge, United States District Judge Robert Holmes Bell, to set aside the verdict and to declare a mistrial. Finally, after two subsequent abortive efforts to retry the case, each ending in mistrial, the parties finally tried this case to completion before Senior United States District Judge Wendell A. Miles. This time the jury returned a verdict in favor of Freightliner finding no cause of action, and the court entered judgment thereon. This appeal followed.

The Grossheims raise three issues on appeal. First, they assert that Judge Bell abused his discretion in setting aside the $800,000 verdict returned by the jury in the first trial. There was insufficient basis for declaring the mistrial, they argue, and therefore seek reinstatement of that ver-

dict. In the alternative the Grossheims claim two errors in the ultimate retrial. They argue that Judge Miles erred by excluding from evidence their proposed exhibit consisting of a trucking industry document that sets forth recommended designs for truck cab climbing systems, and by retaining jurisdiction after ANR Freight Systems defeated complete diversity by intervening as a silent party plaintiff. Accordingly, the Grossheims ask us to vacate the judgment of no cause of action and to remand to the district court for yet another trial on the merits.

We conclude that Judge Bell did not abuse his discretion in ordering a new trial following the first verdict, and that no error has been demonstrated sufficient to warrant reversal of the judgment of no cause of action on the second trial. Accordingly, we affirm.

## I.

The scenario that presented itself to the district court following the return of the jury verdict in the first trial was new to the experienced trial judge, but certainly not unheard of. Jurors frequently react emotionally upon return of their verdict. A jury's decision-making process is often stressful and a natural sympathy for genuine injuries often gives rise to painful conflicts when the question of legal fault and responsibility is close. The tortured history of this case, which saw four trials, three of which aborted, suggests that the issue of liability was razor thin.

The first trial consumed six days. Thereafter, upon submission upon instructions not challenged here, the jury deliberated for two and one-half days, twice informing Judge Bell that it was deadlocked. Each time, however, Judge Bell, with the consent of both parties, gave the jury a modified "Allen" charge. Neither party objected to that instruction. Finally the jury returned to the courtroom and the foreman announced a verdict in favor of the Grossheims. Thereafter members of the jury, in unison, told Judge Bell that this was indeed their verdict. Because two jurors appeared particularly distressed as they voiced assent to the verdict, however, counsel for Freightliner asked the trial judge to poll the jurors individually. One juror, Elizabeth Buxton, was so equivocal when asked whether the returned verdict was her verdict that Judge Bell, after further examination, set aside the verdict and declared a mistrial. The Grossheims appeal that order.

Fairness and a full understanding of the setting in which Judge Bell exercised his discretion require that we reproduce verbatim the transcript of the proceedings:

THE COURT: The jury having indicated that they have their verdict form filled out, apparently have reached a verdict, we will bring the jury in in this matter. (Jury in at 3:31 p.m.)

THE COURT: You may be seated. Okay, Madam Clerk.

THE CLERK: Members of the jury, have you agreed upon a verdict? If so, let your foreperson rise.

Would you please read your verdict, Mr. Foreperson?

THE COURT: Just a minute here. You have a sealed verdict there. Would you please hand it to the Bailiff? I'm sorry. That's okay. We'll do it just a little differently in this case.

Madam Clerk, would you please examine the sealed verdict. You may be seated. Thank you. May I please see this.

Madam Clerk, would you please read the verdict into the record in this matter. This is being a special verdict form, if you would please read the question and read the answer following it then, please.

THE CLERK: Question No. 1: Was Freightliner negligent in its design of the climbing system? Answer: Yes.

No. 2: Was Freightliner's negligence a proximate cause of Plaintiffs' injuries? Answer: Yes.

What are Plaintiff Ronald Grossheim's damages? One million six hundred twenty-five thousand dollars.

Was Ronald Grossheim negligent? Answer: Yes.

Was Ronald Grossheim's negligence a proximate cause of Plaintiffs' injuries? Answer: Yes.

Ronald Grossheim's negligence: 60 percent.

THE COURT: Okay. Mr. Foreman, was that and is this your verdict?

JUROR KEMARLY: It was, all of us.

*THE COURT: Ladies and gentlemen of the jury, was that and is this your verdict?*

*THE JURORS: Yes.* [emphasis added]

THE COURT: Okay. Mr. Haffey, would you wish the jurors be polled in this matter?

MR. HAFFEY [counsel for defendant]: Yes, I would, Your Honor.

THE COURT: Madam Clerk, would you please poll the jurors.

THE CLERK: Elizabeth Buxton, was that and is this your verdict?

JUROR BUXTON: It's something I can live with.

THE CLERK: Deloris Duke, was that and is this your verdict?

JUROR DUKE: I don't like it, but yes.

THE CLERK: Elizabeth McLeod, was that and is this your verdict?

JUROR McLEOD: Yes.

THE CLERK: Darren Kemarly, was that and is this your verdict?

JUROR KEMARLY: Yes.

THE CLERK: Coralene Jones, was that and is this your verdict?

JUROR JONES: Yes.

THE CLERK: M.A. Sainz, was that and is this your verdict?

JUROR SAINZ: Yes.

THE COURT: Okay. Thank you, Madam Clerk.

Let me ask Juror Number 1, was this and is this your verdict?

JUROR BUXTON: I don't know what you want me to say. I'm not happy with it, but I can live with it. I can tolerate it so that I can go home.

THE COURT: Okay. For the required unanimity in this matter, this is your verdict, is it, for purposes of this matter?

*JUROR BUXTON: Yes.* [emphasis added]

THE COURT: Okay. Juror Number 2, is this your verdict for purposes of this matter?

JUROR DUKE: Yes.

THE COURT: Okay. If you can be excused, all of you, to the jury room just for a few moments and then we'll excuse you in this matter. Thank you. You may be excused. (Jury out at 3:35 p.m.)

THE COURT: Anything need be placed upon the record as it relates to the jurors' indication of whether or not this is their verdict, Mr. Fishback?

MR. FISHBACK [counsel for plaintiffs]: I don't believe so.

THE COURT: Mr. Haffey?

MR. HAFFEY: Yes, Your Honor. It seems apparent, both on the record and what's not on the record, which is a woman in the back row crying, that this is not a unanimous verdict, that this is a coerced verdict, at least as to—and I may be wrong on the numbers, but I think Juror Number 1 and also as to Juror Number 2. It's probably the type of thing that ought to be raised now rather than on a later motion after the jury has been discharged, a motion for a new trial or JNOV. But the woman in the back— the two women in the back row are both crying, and one says it's something I can live with in order to go home today. I don't have the exact language, the record will reflect that, but it is not a unanimous verdict.

THE COURT: Mr. Fishback?

MR. FISHBACK: I really don't have any comment. I think that the assent to the verdict was sufficient. Obviously, it was an emotional kind of thing for the jurors, as it has been for all of us who've had any contact with the case.

THE COURT: The problem, and I'm— this is a unique situation. I've never had this situation before. The problem we have confronted here is the unanimity that is required for a juror, and for a juror to blurt out, as Juror Number 1 did, I can live with this is troublesome. It's very troublesome to the Court.

I'm inclined to think that we might be better served by bringing these two jurors who have indicated some disagreement into the courtroom individually and inquiring of them separately as to whether or not, and this is not impeaching their verdict, but just to get a clarification of this. I'm troubled that when we ask them was that and is this your verdict when they're polled, we get this amount of reservation.

I seem to have, Madam Clerk, lost my chart of the jurors' names. Do you have names of the jurors?

Would you please ask Mr. Bailiff to bring in Elizabeth Buxton. If you could ask her to come into the courtroom by herself, if you would, please. (Juror Buxton entered the courtroom.)

THE COURT: Mrs. Buxton, if you'll just have a seat here briefly. I am bringing you here into the courtroom with just the lawyers and us here because it was indicated—I think you indicated when we asked you when you were polled individually that you could live with the verdict, and I don't want to make you uncomfortable in this matter, but I think I have an obligation to just briefly pursue this further, if you'll forgive me for this invasion of your privacy. And I don't want to know what went on in the jury room, but I just want to make sure that we have an indication from you for the record that, as to the unanimous verdict that was required from all of you jurors, is this your verdict that was returned in this matter?

JUROR BUXTON: No. It's one I—you said compromise. That's one of the words you used several times, was it not, or am I not remembering right?

THE COURT: In the course of your deliberations as jurors, I anticipate that compromises, rethinking of positions, reviewing what you've heard, perhaps changing your mind is a part and parcel of the arriving at a conclusion or a verdict; however, of course, not surrendering your conviction as to what you believe honestly to be the weight and effect of the evidence and the law. But keeping in mind that principle, I guess I have

to come back and say is this or is this not your verdict?

*JUROR BUXTON: No. It's a compromise, totally.* [emphasis added]

THE COURT: Counsel approach the Bench. (The Court and counsel conferred at the Bench.)

THE COURT: Thank you, Ms. Buxton. You may be excused. Thank you.

May I see Mrs. Duke?

THE BAILIFF: Just a minute. That was Number 2?

THE COURT: Deloris Duke, yes. (Juror Duke entered the courtroom.)

THE COURT: You may be seated. Thank you, Ms. Duke. I'm sorry to continue this process. It's as unpleasant for you as it is for me in this case, I'm sure it is, but I have to follow up. I'm duty-bound to follow up with the remarks which you and another juror made as to the unanimity or the unanimous requirement of the verdict, and so I'm asking you to come out here by yourself into the courtroom on the record here and really answer basically one question, and that is this: For a unanimous verdict that is required, each juror must have independently arrived at the conclusion that it is their verdict, so my question to you is was this or is this your verdict in this matter?

JUROR DUKE: Yes.

THE COURT: It is your verdict?

JUROR DUKE: (Nodding head.)

THE COURT: Okay. Thank you. Thank you.

Any objection to excusing the jurors at this time, Mr. Fishback?

MR. FISHBACK: No. I have no objection to excusing the jurors. However—

THE COURT: Mr. Haffey, any objections to excusing the jurors here?

MR. HAFFEY: No, but I don't want— I'm moving for a mistrial. I mean, I think we have a non-unanimous verdict.

THE COURT: But do we need anything more to do with this jury at this time?

MR. HAFFEY: I don't think so.

THE COURT: All right. They may be excused, then.

MR. FISHBACK: I wonder, would the Court consider informing them that it's appropriate at this point to speak to the attorneys if they so desire? I mean, I usually do that after trials to get whatever input we can from them. It's kind of a habit of mine.

THE COURT: Let me instruct the Bailiff to tell the jurors that they're free to talk about the case with each other or with the attorneys, with the parties or anybody they want to from now on. Okay. Thank you. You may excuse them.

At this point the trial judge instructed defense counsel to move for a mistrial and after a response by the plaintiff, the trial court heard and granted that motion. After hearing arguments from counsel on March 23, Judge Bell made the following recitations of facts and from them concluded to grant the mistrial:

THE COURT: Thank you, gentlemen.

As the Court indicated, gentlemen, when we retired from the record at about four o'clock on the date of February 23rd, this Court indicated it would sleep on this and require some briefing and think about it because of the serious nature of the issues presented. This Court indicated that, after having concluded hundreds of these type proceedings, this was a very unusual situation. I think that's important for us to remember. This is not, in one's life's experiences as judges and lawyers, in any sense of the term a common occurrence.

Let's go back to the instructions that were given, to Defendant's Request Number 85 and 87, which were agreed upon by both parties and were given by this Court. There was an indication following Devitt & Blackmar, Federal Jury Practice and Instructions, Third Edition, Section 74.01 and 74.14, that the jurors were to agree: "Your verdict must be unanimous. It is your duty to consult with each other with a view to reaching an agreement. You must"—here are the key words that were given to the jury.

"You must decide the case for yourself, but only after an impartial consideration of the evidence in the case with your follow jurors. In the course of your deliberations, do not hesitate to re-examine your own views, and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your follow jurors or for the mere purpose of returning a verdict," end of quote.

Then as the Court related to the special verdict, the Court gave the following instruction, quote: "Your answers to the special questions submitted to you must be unanimous." Then when the Court reread a part of the instructions concerning what to do with the jurors deadlocked, the jurors were once again reminded of the unanimity requirement.

It's very important to remember in this case that neither party had any objections to these instructions on this particular point. It, therefore, becomes the law of the case for purposes of reviewing it today, the unanimity requirement. I think this is particularly pertinent when one looks at Federal Rule 48, where not the exact issue is present, but the reasoning implicit in the rule becomes clear when one reviews that rule: "The parties may stipulate that the jury shall consist of any number less than twelve or that a verdict or a finding of a stated majority of the jurors shall be taken as the verdict or finding of the jury," which would give the clear impression that if there is no stipulation, there must be unanimity, that the unanimity requirement may only be relieved by stipulation.

And I find in the case of *Masino* versus *Outboard Marine Corporation*, which is found at 652 Federal Reporter Second 330 at page 332, Footnote 2 [ (3rd Cir.1981) ] is a very interesting comment. It reads as follows, quote: "The federal unanimity requirement is implicit in Federal Rule Civil Procedure 48: 'The parties may stipulate that the jury shall consist of any number less than twelve or that a verdict or a finding of a stated majority of the jurors shall be taken as

the verdict or finding of the jury,' " end of quote. So it appears that the federal rule of unanimity is rather implicit without having been stated per se.

Now, an argument is put forth that this being a diversity matter, that due process should comport with the state requirement of five of six. This same issue was presented in *Masino,* and the Third Circuit some few years ago discussed this question of the single apparent state interest in application of a five-sixth majority rule and indicated that a greater efficiency in judicial administration is reduced by the number of deadlocked juries. Then the Court went on to state what I think is a very important principle here: "Pennsylvania," this being a Pennsylvania case, this *Masino* case, "has no concern, however, with the administration of the federal judicial system. Because trial management in the federal courts is a weighty concern of the federal judiciary and of concern to the state judiciary, the absence of a state interest in application of the five-sixth majority rule fulfills the first premise of *Byrd,"* *Byrd* being the prior decision, *Byrd* versus *Blue Ridge Electric Cooperative,* 356 U.S. 525, [78 S.Ct. 893, 2 L.Ed.2d 953] where the *Erie* versus *Tompkins* [304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188] doctrine of the application of state substantive law to the federal court was placed in issue.

They went on in the *Masino* case to indicate, "The federal interest in unanimity, although not rising to constitutional dimensions, is cloaked in a strong tradition. The federal interest need not be of constitutional magnitude to outweigh an insubstantial state interest." And then the Court went on further, and it's the Third Circuit, but it's instructive, to say, "We are not convinced that application of the federal unanimity rule instead of the state five-sixths majority rule will alter a substantial number of outcomes and thereby frustrate the policy of discouraging forum shopping underlying *Erie* and its progeny."

So it seems to this Court that there are two principals [sic] that this Court must enunciate in finding the unanimity requirement. One, I find it is the law of the case of *Grossheim* versus *Freightliner* to which no objection was had. I find, secondly, it appears to be implicit in Rule 48, and at least recognized by this and a number of other cases that have dealt with this. *Bledsoe* versus *Garcia,* 742 F.2d, found at 1237, [(10th Cir. 1984)] talks about it at 1243, and therefore, I find that that appears to be the law in the area.

Secondly, I would find that there appears to have been no stipulation entered by counsel or agreement had by counsel to alter that requirement of unanimity as it became obvious that the jurors were deadlocked. In fact, quite the contrary appears to have been true; that this Court discussed with these counsel the *Allen* or the so-called tail-twister charge, and the parties and the Court agreed that something less than that should be undertaken if at all possible, and the Court very carefully, in its own opinion, talked to the jurors about this unanimity requirement and the due consideration to be given to one another, all with the acquiescence and approval of counsel for both parties. So the unanimity requirement in this case was certainly not new nor a surprise to anyone.

Now, going back to the text and, of course, everyone's clear memory of what happened in this unfortunate situation, unfortunate for what brings us back here today for, was the response not of the foreman saying yes, it was the verdict of the jury, but the response to the polling. And, of course, it's clear as a matter of right that either party or both may request that the jurors be polled, as is their right.

Now, the question of what the foreman says is not significant for purposes of what a single juror may later say. And this Court was presented with, as this Court indicates later on in the transcript here, an unusual situation where nonverbal responses, together with verbal responses, caused great concern to counsel and the Court, the nonverbal re-

sponse giving this Court considerable reason to believe that there had been some acrimony in the course of arriving at this verdict. Hence, the polling resulted in a clear understanding that at least two of the jurors answered very slowly, very hesitatingly, and with some equivocation. It's something I can live with, I don't like it, but yes, that form of response.

Now, the unanimity requirement does not require that the parties compromise and that be all. If it did, three jurors could come up with a verdict of $100,000 and the jurors could walk in here and say We've comprised [sic], the verdict is $75,000. It's not our verdict, but it's a compromise.

Now, the unanimity requirement says that each juror must conclude that that is his or her own verdict. Otherwise, it's not really unanimous. It's just an agreement to compromise. Now, compromising means that one may look at the other party's position and adopt it in the course of arriving at a unanimous verdict. But this wasn't what was disclosed.

So this Court was presented with an unusual situation of bringing the jurors in individually, and at the time this Court brought the jurors in individually, then we had the colloquy with Juror Buxton, who indicated that no, it had only been a verdict that was reached to end the matter, and it was not her idea, but it was for purposes of ending the case.

Juror—The second juror who had some equivocation, when the Court asked is this your verdict for purposes of this matter, she said yes. So the Court found that she was, even though clearly verbally and nonverbally equivocal, she certainly, on individual polling outside the other jurors, indicated that she adopted it. That would have been the requirement. Juror Buxton did not.

So, therefore, the Court has to conclude factually that Juror Buxton's response was a response which leads to the conclusion factually that in fact this juror was not—this jury was not unanimous in its rendering of the final product in the Special Verdict Form. Therefore,

it not being a unanimous verdict, a mistrial must of necessity be granted and the case must be retried in this particular matter.

A mistrial, this Court recognizes, is a drastic remedy. It's a remedy that is not to be lightly undertaken. It is a remedy which balances the evils of requiring the parties—the aggravations and costs of requiring the parties to retry, at some expense and inconvenience to themselves and the Court, the trial of the matter. That must be balanced against the potential that the verdict is not truly a just verdict from the jurors' perspectives, and that balancing in this case, based upon this record, leaves this Court with a rather firm and settled belief, having given a lot of thought to this, that in fact justice would better be served to retry this matter in front of another jury at another time and arrive, then, at a unanimous verdict that is unimpeachable by the jurors' acquiescence in a unanimous conclusion.

Again, for appellate purposes, I want the record very clear that this is most unusual, and it is with great hesitation that the Court grants a mistrial. This Court's experience in 16 and a half years on the Bench is that I can count the mistrials I have declared on one hand, almost out of memory. It is a very unusual situation, and again, not lightly to be undertaken.

## II.

 Our standard of review in these circumstances is a familiar one, namely, whether the trial judge abused his discretion when he granted a mistrial and ordered a new trial. *Fortenberry v. New York Life*, 459 F.2d 114 (6th Cir.1972). The Grossheims offer, however, two reasons why the trial judge abused his discretion. First, they argue, the trial judge erred in declaring a mistrial since federal law does not require a unanimous verdict, and five votes of the remaining members of the six-person jury are sufficient under Michigan law. In civil cases, they maintain, federal law does not absolutely re-

quire unanimous verdicts. Judge Bell addressed this matter directly and we agree with his conclusion. Even if federal law should not require unanimity, the verdict in this case had to be unanimous because both parties specifically consented to jury instructions stating that the verdict must be unanimous. Therefore the case was put to the jury and decided by it on that major premise. 1B Moore's *Federal Practice* PO. 404(1) at 401–03. In addition we note that unanimous verdicts are required in federal court even in diversity cases. Fed.R.Civ.P. 48; *Hanna v. Plumer,* 380 U.S. 460, 469–71, 85 S.Ct. 1136, 1142–44, 14 L.Ed.2d 8 (1965).

■ The Grossheims' second argument in support of their claim that Judge Bell abused his discretion is a factual one. They argue that Judge Bell erred when he determined that the jury verdict was not unanimous, and that he went beyond the discretion vested in him in looking beyond that initial language in which Juror Buxton, they argue, indicated her initial assent and agreement to the verdict. In support, the Grossheims rely principally upon *Grace Lines, Inc. v. Motley,* 439 F.2d 1028 (2d Cir.1971). There, the district court declared a mistrial after a polled juror, asked whether the jury verdict was her verdict, responded, "Yes it had to be unanimous," and then explained further:

> The verdict, as I understand, had to be one hundred per cent in favor and we had to present one statement. I was, I think the only one that held out and there was no possibility of any change and because of that I did.

439 F.2d at 1030. Under those circumstances the Second Circuit, correctly we believe, reversed the declaration of mistrial. There was no mistrial in that case, the Second Circuit held, because the polled juror "did not state that she disagreed with the verdict and responded to the clerk's query as to whether she found for the defendant, in the affirmative but then went on to explain what had motivated her affirmative vote." *Id.* at 1031.

The circumstances here are quite different. Juror Buxton twice stated that she disagreed with the verdict. She twice answered "no" when specifically asked whether the announced verdict was and is her verdict. In addition the colloquy between counsel and the court indicates nonverbal responses reflecting a good deal of emotion.

It is obvious that the trial judge did not consider the question in isolation from the setting in which it was asked. Nor should we. It came against the jury's twice reporting that it was deadlocked and twice requiring special instructions. While no objection is made to the quality of those instructions (nor can it be), we cannot ignore the inevitable pressure upon a given juror. Plainly, there was a clear indication that Juror Buxton not merely compromised her views in order to reach a verdict, but instead genuinely disagreed with that verdict.

We have quoted at great length the record in the district court. One hundred citations to other cases, replete with comparisons and distinctions, might delight academia but cannot begin to convey the actual drama as it unfolded in the district court and led to the trial judge's anguished decision to declare a mistrial. The record itself, revealing the interplay among juror, counsel and court, reflects how the issue unfolded before the trial court. It reflects as well an admirable example of how that judicial function is discharged and persuades us that the discretion, so exercised, merits our affirmance.

### III.

■ In the alternative, the Grossheims assert that Judge Miles made two errors during the ultimate retrial, and ask that we reverse the final judgment finding no cause of action. First, they argue that Judge Miles abused his discretion by excluding proof of a standard or recommended practice which, they maintain, was widely recognized in the truck manufacturing industry.

■ The particular exhibit, excluded by the trial judge, was a "Regulated Common Carriers' Conference Recommended Prac-

tice RP–404," allegedly relevant because it included the recommendations of a truck user group for design features for truck climbing systems. Freightliner objected to the exhibit as hearsay. The Grossheims for their part countered that the exhibit was admissible under Federal Rules of Evidence 703, which permits expert witnesses to testify based on data that are inadmissible as evidence, and also under Federal Rules of Evidence 803(18), an exception to the hearsay rule that allows parties to read learned treatises into evidence although those treatises may not be received as exhibits. The relevance of these rules eludes us. Judge Miles permitted the Grossheims' expert to use RP–404 "as evidence of feasible alternative designs" but excluded its use as an exhibit because the Grossheims had failed to establish that it described "industry wide standards." Judge Miles' explanation was that "a nonbinding recommendation is not admissible as a standard." He further observed that "there is no indication that RP–404 was considered authoritative by the relevant industry." We have carefully reviewed the exhibit in question against the record and are unable to conclude that Judge Miles' abused the broad discretion vested in him. Like Judge Miles we, too, find no evidence that RP–404 constitutes anything more than a recommended practice promulgated by the truck users group. We see no indication that the manufacturing industry has adopted the recommendation as a custom or standard. Finally, the Grossheims argue that Michigan Rules of Evidence, as opposed to the federal rules, should govern in this diversity case. Federal Rules of Evidence, however, govern. 19 Wright & Miller, *Federal Practice and Procedure,* § 4512.

Finally, plaintiffs argue that the trial court's diversity jurisdiction was destroyed when Mr. Grossheim's employer, ANR Freight System, intervened as a "silent party plaintiff." Since the case as commenced presented complete diversity, the critical question before Judge Miles was whether the intervention by ANR thereafter could and should preclude diversity jurisdiction. This, in turn, depends upon whether the intervenor was an indispensable party when the complaint was filed. *Dean v. Holiday Inns, Inc.,* 860 F.2d 670, 672 (6th Cir.1988). Judge Miles determined that it was not, and the Grossheims have not argued otherwise. Instead they argue that ANR Freight's intervention was permissive, conceding that intervention "of right" under Rule 24(a), Federal Rules of Civil Procedure, is ancillary to and does not destroy diversity jurisdiction. The district court, however, properly regarded ANR Freight's intervention as one of right. Had he concluded otherwise, however, Judge Miles simply could have denied intervention altogether. Coming as it did during the middle of a trial before the fourth jury in this case, the conclusion is inescapable that ANR Freight's attempted intervention could only be considered as totally disruptive of the goals of the Federal Rules of Civil Procedure to promote the "just, speedy and inexpensive determination of every action." Fed.R.Civ.P. 1. We hold that the district court properly exercised its discretion by continuing to exercise its diversity jurisdiction after ANR Freight intervened.

For the foregoing reasons the judgment of the district court is AFFIRMED.