**Geetha BHAT, Ph.D., M.D., Plaintiff–Appellant,**

v.

**UNIVERSITY OF CINCINNATI, et al., Defendants–Appellees.**

**No. 00–3529.**

United States Court of Appeals, Sixth Circuit.

Oct. 3, 2001.

Before KEITH, ALAN E. NORRIS, and BATCHELDER, Circuit Judges.

## OPINION

PER CURIAM.

Plaintiff-appellant Dr. Geetha Bhat appeals judgment for defendants following a jury trial in this action for gender and national origin discrimination in employment. Dr. Bhat's claims on appeal arise from the district court's handling of a juror following a poll of the jury, during which the juror dissented from the verdict. For the following reasons, we AFFIRM.

## I. BACKGROUND

On April 13, 1998, Dr. Bhat filed a complaint against the University of Cincinnati,

Richard Walsh, M.D., and John J. Hutton, M.D., alleging employment discrimination and retaliation on the basis of national origin, race, gender and age in violation of 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, Equal Pay Act, and Ohio state law. Subsequently, Dr. Bhat's Title VII and § 1983 claims against the University and Dr. Walsh were tried to an eight-member jury beginning March 20, 2000.

On Wednesday, March 29, following oral arguments, the district court instructed the jury. The instructions included the following statements:

> It is your duty as jurors to confer with one another and to deliberate with a view to reaching an agreement, if you can do so without sacrificing your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if you're convinced it is erroneous. However, do not surrender your honest convictions as to the weight or effect of the evidence because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.

(J.A. at 213). The district court submitted to the jury a special verdict that consisted of nine interrogatories on the separate liability of the University and Dr. Walsh on each claim, and six interrogatories on damages.

The jury began deliberations at 12:57 p.m. on Wednesday, March 29, 2000. On Thursday morning at 9:00 a.m., the jury foreman sent the district court a note asking for clarification of the jury instructions. (J.A. at 191). The district court conferred with counsel for the parties, and the court responded by note to the jury's question to counsels' satisfaction.

At 3:00 p.m. Thursday afternoon, the jury foreman sent the district court a second note asking: "If we are at an impasse, what action should we take and how long should we continue to deliberate?" (J.A. at 192). Again, the court conferred with counsel. The court informed counsel that it had prepared a draft *"Allen* charge"[1] to be used as a supplemental instruction if the jury ultimately became deadlocked. The parties had an opportunity to review the charge, and no objections were made. Because the jury was not deadlocked, the court informed the parties that it would respond to the jury's question by note. The court drafted a response to the question stating: "If you are at an impasse, please notify the Courtroom Deputy that you are unable to reach a verdict. You should deliberate until such time as you believe that further discussions will not be fruitful/helpful to resolve your disagreements." (J.A. at 226). Counsel approved of the language of the note, which was delivered to the jury at approximately 4:00 p.m.

At 12:45 p.m. on Friday, March 31, the jury foreman sent the court a note stating: "A portion of our jury would like to speak to Judge Beckwith." (J.A. at 193). The

---

1. An *Allen* charge is a supplemental jury instruction that the trial judge may give when the jury announces that it is unable to agree on a verdict. Without being coercive, an *Allen* charge urges jurors to keep trying to reach verdict, and is designed to assist them in finding common ground by reminding them of their duties as jurors, encouraging them to give due deference to arguments of fellow jurors, and to reexamine their own views without abandoning their deeply felt beliefs. An *Allen* charge is named after the case of *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), in which the charge was first approved.

court conferred with counsel, and responded with a note stating: "Those members of the jury who have questions or concerns for the judge should write down their questions and/or concerns on individual sheets of paper signing each. The Judge will then respond to each juror in writing." (J.A. at 228–29, 193).

At 1:05 p.m. on Friday, the jury foreman sent the district court a note asking: "If one of the jurors refuses to adhere to the juror's instructions and is holding up the progress, is there anything that can be done so that we can move forward?" (J.A. at 194). Also at this time, juror Mary Marrow sent the district court a note asking: "According to the *Law*, is each juror required to tell all the other jurors the *reason* for the decisions that they made?" (J.A. at 195 (emphasis in original)).

The district court discussed the two questions with counsel on the record. The court subsequently responded to both notes with a single note stating that the jurors must share his or her opinions with the other jurors.[2] The note was delivered to the jury at approximately 1:35 p.m. (J.A. at 196). At 2:50 p.m., the jury returned a unanimous verdict for the defendants. Upon polling, however, Juror No. 8, Ms. Marrow, stated "I can't say yes, I can't say yes" in response to the question of whether the verdict was her true and accurate verdict. (J.A. at 236).

The district court judge stated that she was inclined to speak with Ms. Marrow in chambers on the record, and invited a discussion at sidebar. At sidebar, the court asked the attorneys for suggestions in dealing with the situation. Dr. Bhat's counsel stated that he had never experienced such a situation, and wanted to "find out what goes on." (J.A. at 236). The court informed counsel that Juror No. 8 was the juror who had sent the court a note asking whether she had to explain her reasons for voting. The judge stated that she would like to speak to Ms. Marrow and the other jurors individually. The court noted that if Ms. Marrow did not agree with the law or did not want to follow the law, she would be obliged to removed her from the jury for cause. The attorneys requested to be present while the district court talked with Ms. Marrow, and the court agreed.

The district court called recess, and dismissed the jury except for Ms. Marrow. The district court invited the attorneys to put anything on the record, and Dr. Bhat's counsel requested a sidebar. There, the following discussion took place:

> DR. BHAT'S COUNSEL: Your Honor, it's plaintiff's position at this point that the verdict that's been read is invalid, because of the statement of the eighth juror that is not her true and accurate verdict; that the jury ought to be reconvened in the jury room so that Juror No. 8 can resume deliberations with the other seven jurors.

---

**2.** The district court gave a note the jurors stating as follows:

> The purpose of the jury system is to place the resolution of factual disputes in the hands of members of the community, who will well and fairly try those ideas. Members of a jury are obligated to reason with each other, to reach a verdict based upon the law, as explained in the Court's instructions, and the facts as they find them to have been proved by a preponderance of the evidence, period. Each juror must be able to share his or her opinions about the facts, and the application of the law to those facts, with his or her fellow jurors. If you cannot explain your position, perhaps you should rethink your position. If you refuse to explain your position to your fellow jurors, then you are not fulfilling your obligations as a juror.
>
> It is your sworn duty to follow the instructions, whether you agree with them or not.
>
> (J.A. 196).

DEFENDANTS' COUNSEL: Your Honor, she has signed it. I guess we need to talk to her to find out what's going on. I mean, she has signed it. And as you said, it's been published.

.　　.　　.　　.　　.

COURT: Okay. Anything further?

DR. BHAT'S COUNSEL: Nothing Further.

COURT: Okay. I am going to deny your request at this point, and we will proceed as previously outlined. We will have a conference in chambers with this juror to find out why she hesitates. If it then seems appropriate to resubmit the matter to the jury, we will.

On the other hand, if it seems appropriate, I may excuse her for cause, if she is not willing to follow the instructions of the Court, which seems to be the case at this point. Okay.

(J.A. at 239–40).

In chambers, the following discussion took place between the court and Ms. Marrow:

COURT: Miss Marrow, when [the clerk] read the jury's verdicts, each of which had your signature on it—

Ms. Marrow: Uh-huh.

COURT:—you indicated that you were hesitant to say that was your true and accurate verdict. Obviously we need to know what is the problem. Would it be helpful for you to go back to the jury room to continue your deliberations with your fellow jurors?

MS. MARROW: I don't think so. I—basically, well, I signed, but some of it I felt like I was under pressure from the other jurors, and maybe my interpretation was a little different than what theirs was of it. And I think what actually happened is that I basically let them convince me. I mean, we have been going through it, I have been holding out for a long time, and everybody was getting antsy, and some of the things I agreed with. And we sent, you know, notes to try to clarify some things.

And after our last note, I—guess I went along with the majority.

COURT: Okay. Well, if you're not in agreement with the verdict, then I think you should go back to the jury room and revisit the issues, discuss further with your fellow jurors what your respective positions are. I have not had any indication from any other member of the jury or from the foreman that your deliberations are at impasse. So I think you should go back to the jury room and continue your deliberations until you can either reach a verdict, or you are satisfied that you can't.

Is there a problem with the instructions?

MS. MARROW: No. The instructions were pretty clear, its just I think that some of our interpretations were different, you know, and that, you know, some of the minds were already made up, you know, prior—when we got up there. So they are ready to leave. And it was, you know, the pressure was being put on me to hurry and make a decision. And after I went over a lot of the—everything, and then I got your instructions, we went over it again, and I signed. But I basically told them upstairs that, you know, before we came down, that I wasn't really quite sure of my decision. They knew that.

I feel bad now that I did sign it—not all of it, some of it I had already signed. I had some questions on some of the others.

COURT: Okay. Well, you understand that the burden of proof is by a preponderance of the evidence.

MS. MARROW: Yes.

COURT: That things must be proved to your satisfaction to the extent that they are more likely so than not so?

MS. MARROW: (Indicating Affirmatively).

COURT: Okay. We will print new verdict forms that are blank, send them up to the jury room to the foreman, and you all should begin your deliberations again. There is no other jury that can do a better job, that will hear more evidence, receive more exhibits. Each side has put a great deal of time and effort into the case. And if the jury is unable to reach a verdict, another trial may have to occur, and each side will incur additional time, effort and expense. So if at all possible, you should attempt to reach a verdict. Okay?

MS. MARROW: (Indicating Affirmatively). Okay.

(J.A. at 241–43). Counsel remained silent throughout the court's discussion with Ms. Marrow. Ms. Marrow returned to the jury room at 3:11 p.m. (J.A. at 198).

The court asked counsel for the parties if they wanted to put anything on the record. Counsel for Dr. Bhat stated the following:

> Your Honor, the only thing I would say on the record is I believe at this point any verdict would be invalid, because she has already told you that she felt an enormous amount of pressure from the other jurors. Some had made up their minds when they got up the jury room, is what I heard.
>
> That disturbs me because obviously that indicates that they did not go through the exhibits they were given, nor did they reach decisions after a full discussion of the issues among themselves. She said that they retired, I recall on Wednesday afternoon, she said there was pressure to leave, and there was pressure to hurry and make a decision. And I think—I would move at this point that the trial be declared a mistrial, due to a deadlocked jury.

And, unfortunately, she was pressured to give a—to put a signature on there that was not of her own free will, apparently. It's unfortunate that they had not indicated impasse in some way that would make an Allen charge like you made, it might be appropriate. But now I think it's—I think now we have got pressure not only from her fellow jurors, but from the Court to make a decision.

So we would move, on behalf of the plaintiff, that the matter be declared a mistrial.

(J.A. at 243–44).

The court suggested the possibility of giving the jurors the *Allen* charge that had been prepared. Dr. Bhat's counsel responded as follows:

> Your honor, we would object to an Allen charge, because I think, as you know, that an *Allen* charge is controversial in ordinary circumstances because of the possibility of pressure and/or coercion. And I think under these circumstances it would just add to what's already—I think you gave her a partial Allen charge here, you know, and I—you know, I frankly think it ought to be a mistrial, and that—because obviously the other jurors acted inappropriately in putting any kind of pressure on her to sign that document. . . .

(J.A. at 245). The court asked counsel what would he say if the court brought the other seven jurors to chambers and they informed the court that Ms. Marrow was refusing to follow the jury instructions. (J.A. at 245). Dr. Bhat's counsel stated that he did not feel it was appropriate to speak to the other jurors to determine whether Ms. Marrow was refusing to follow the court's instructions because they "would be invading the sanctity of the jury room." (J.A. at 246).

The court then informed counsel that Ms. Marrow had requested that delibera-

tions begin at 8:15 a.m. that day, because she had a commitment at 3:00 p.m. While the other jurors had arrived by 8:15 a.m., Ms. Marrow did not show up until 9:00 a.m. The court also noted that it was twenty or twenty-five minutes past 3:00 p.m. at that time. The court stated further:

I really can not say with any degree of certainty what is going on with [Ms. Marrow]. But it's clear from her question that she was not willing to share with the other members of the jury at some point her position, and the rationale behind it, which of course is a violation of her obligation as a juror. And I think that question came about 1:30 this afternoon, which leads me to believe that she spent a considerable amount of time refusing to explain herself or make her position understood by her fellow members of the jury....

(J.A. at 246). The court asked Dr. Bhat's counsel if he was willing to accept the verdicts that Ms. Marrow had stated were her own. Counsel stated that he would not agree to that, because of the possibility that Ms. Marrow was pressured into her decisions.

At this point, the court received a note from the jury foreman, signed at 3:23 p.m., stating that "Juror 8 has indicated that she has no intention of changing her mind on Interrogatory 6 and 8. Mary Marrow is in agreement totally with #1, 2, 3, 4, 5, 7, and 9. We are at a permanent impasse on item 6 and 8." (J.A. at 248). Dr. Bhat's attorney again suggested that a mistrial be declared.

The court and counsel determined that Ms. Marrow's answers to the interrogatories were inconsistent as a matter of law.[3] Counsel for Dr. Bhat suggested that the entire jury might have been confused, and in any event, the inconsistency was further indication that something was wrong. Counsel for defendants suggested that a verdict be entered on some of the claims.

At 3:25 p.m., the court asked that Ms. Marrow brought to chambers a second time. Counsel for Dr. Bhat voiced no objection. The following discussion between the court and Ms. Marrow occurred:

COURT: Ms. Marrow, I have a note from your foreman, and he says that you do not intend to change your mind on Interrogatories 6 and 8, which are the issues of constructive discharge, with regard to Dr. Walsh, on the basis of gender and national origin; is that correct?

MS. MARROW: As to today, right, that's correct.

COURT: You leave open the possibility that if you were given the opportunity to deliberate further, your mind might be changed, or you believe that you might change the minds of the other members of the jury?

MS. MARROW: I don't think I will be able to change their minds, but my mind might be changed. But I have gone through all the evidence that was there, and that—those are the two things that I was really stuck on, because I truly believe that.

COURT: Well, all right. He says that you are—the jury is at a permanent impasse on Items 6 and 8. Do you think if you had some more time to discuss it,

---

**3.** Ms. Marrow found that Dr. Bhat had proven by a preponderance of the evidence that Dr. Walsh constructively discharged Dr. Bhat due to her gender (interrogatory 6) and due to her national origin (interrogatory 8). She found that Dr. Bhat had not proven by a preponderance of the evidence that the University of Cincinnati constructively discharged

Dr. Bhat due to her gender (interrogatory 5) or due to her national origin (interrogatory 7). Because Dr. Walsh was an employee of the University of Cincinnati, if Dr. Walsh was found to have constructively discharged Dr. Bhat, then as a matter of law the University constructively discharged Dr. Bhat.

you all might be able to reach a unanimous verdict on those two issues?

MS. MARROW: Not today, I don't think so. I can go through the material again, but not today I don't think so.

COURT: All right. Thank you.

MS. MARROW: Okay.

(J.A. at 250–51). The court then sent Ms. Marrow back to the jury room. Again, counsel remained silent throughout this discussion.

The judge indicated that she was inclined to bring the whole jury back into the courtroom and read them the previously prepared *Allen* charge. The court suggested that the jury could then be asked to return on Monday to continue deliberations. Dr. Bhat's attorney stated his belief that a mistrial was the only option, as an *Allen* charge would create more pressure on Ms. Marrow as well as her fellow jurors to come to a unanimous verdict. In response, the court stated:

> I have not heard anything from her that differs significantly from any other jury dynamics situation. I am inclined to call the jury back, give them the Allen charge; if they don't reach an agreement within a reasonable period of time, or if they come back and say that they are at impasse, then I will declare a mistrial. . . . But I think we should give the jury a fair opportunity to try and reach consensus on these other two verdicts. She indicates that she was willing, despite what her foreman says, to change her mind, if she has the opportunity to review the information. If she doesn't, and she is still convinced that she is correct, then I am certainly not going to beat up on her. That's why we have juries. But I don't think we should give up on them prematurely. . . .

(J.A. at 253).

The jury reentered the courtroom at 3:40 p.m. The court stated that it had received the jury foreman's note indicating that the jury was at an impasse. The court prefaced the *Allen* charge with the following: "In speaking to Ms. Marrow, I have explained what I am about to tell you." (J.A. at 254). The supplemental instruction encouraged the jury to reach a verdict, asked each juror to reconsider their positions, and reminded the jury that "no juror is expected to give up an honest belief that he or she may have as to the weight or effect of the evidence." (J.A. at 254–55). The court informed the jury that it would not ask them to deliberate endlessly, but asked them to try again to reach a verdict. The court told the jury that it should let the court know if, after a reasonable period of time, it was unable to reach a verdict. The jury left the courtroom to deliberate further at 3:45 p.m. (J.A. at 198).

After the jury left the courtroom, the district court asked counsel whether they had anything to put on the record. Dr. Bhat's counsel asked the court to "note the same objection that we have noted already, and our position that a mistrial should be granted in its entirety." (J.A. at 256).

At 5:18 p.m., the jury returned a unanimous verdict in favor of the defendants on all the interrogatories. When polled, Ms. Marrow stated that the verdict was her true and accurate verdict. (J.A. at 260). The court asked the attorneys if there was anything that needed to be addressed before the jury was discharged, and attorneys for the parties stated that there was not. The jury was discharged at 5:25 p.m.

The verdict and final judgment was entered in favor of defendants on March 31, 2000. Dr. Bhat did not file any post-judgment motions, but rather filed a timely notice of appeal with this Court on April 27, 2000.

## II. DISCUSSION

### A. The District Court's Decision to Speak with Juror Marrow in Chambers

Dr. Bhat contends that the district court erred in failing either to declare a mistrial *sua sponte* or to grant her request to allow the jury to deliberate further without direct questioning by the district court after Ms. Marrow dissented from the verdict during polling. We note that Dr. Bhat did not move for a mistrial after Ms. Marrow dissented, but merely requested that Ms. Marrow be permitted to continue deliberations without direct questioning by the court.

Dr. Bhat contends that, once Ms. Marrow dissented from the verdict, the district court was required to either declare a mistrial or retire the jury for further deliberations. For this proposition, Dr. Bhat relies principally upon carefully selected dicta taken from two of this Court's decisions. In *Grossheim v. Freightliner Corp.*, 974 F.2d 745, 752 (6th Cir.1992), we concluded that the district court did not abuse its discretion in declaring a mistrial where two emotionally-charged jurors dissented from the verdict after the jury twice reported it was deadlocked and twice required supplemental instructions. *Grossheim* does not require, as Dr. Bhat suggests, that a district court abuses its discretion in failing to declare a mistrial when a juror dissents from the verdict.

Dr. Bhat also suggests that our decision in *United States v. Love*, 597 F.2d 81 (6th Cir.1979), requires a finding of abuse of discretion here. In *Love*, the district court declared a mistrial after one juror dissented from the verdict, which followed lengthy deliberations and a modified *Allen* charge. 597 F.2d at 86–87. On appeal, we addressed the issue of whether the district court responded to "manifest necessity" in declaring a mistrial, *id.* at 87, not the issue we address here. Dr. Bhat's contention

that the district court below was *required* either to declare a mistrial *sua sponte* or to return the jury to the jury room simply lacks support in this circuit's jurisprudence.

■ Generally, if a juror dissents from the verdict during polling, the court should either declare a mistrial or return the jury to deliberate further. *See King v. Ford Motor Co.*, 209 F.3d 886, 896 (6th Cir. 2000); *Castleberry v. NRM Corp.*, 470 F.2d 1113, 1117 (10th Cir.1972); *Bruce v. Chestnut Farms–Chevy Chase Dairy*, 126 F.2d 224, (D.C.Cir.1942); *cf.* Fed. R.Crim.P. 31(d) (stating that, when a poll of the jury reveals a lack of unanimity, "the court may direct the jury to deliberate further or may declare a mistrial and discharge the jury"). However, where a poll answer is ambiguous or appears coerced, the district court may question a juror to ascertain whether the verdict is unanimous. *See King v. Ford Motor Co.*, 209 F.3d 886, 896 (6th Cir.2000).

■ While Ms. Marrow's response when polled was arguably not ambiguous, the circumstances gave rise to the issue of whether Ms. Marrow was a suitable juror. It is well-settled that jurors have a duty to deliberate. *Allen v. United States*, 164 U.S. 492, 501, 17 S.Ct. 154, 41 L.Ed. 528 (1896); *United States v. Baker*, 262 F.3d 124, 2001 WL 920680, at *5 (2d Cir. Aug 15, 2001). At the time the jury was polled, the court was aware that Ms. Marrow had previously refused to follow the court's instructions regarding the jury's duty to deliberate. Moreover, the court knew that Ms. Marrow had asked her fellow jurors to come in early but did not do so herself, and had signed the verdict forms but then renounced her decision when polled.

The court stated that its reason for questioning Ms. Marrow was to determine whether she should be struck from the

jury for cause.[4] (J.A. at 240). Because the district court could have reasonably suspected that Ms. Marrow was unwilling or unable to follow the court's instructions, its actions were proper given the circumstances. *Cf. United States v. Baker*, 262 F.3d 124, 129–30 (2d Cir.2001) (noting that the question whether "just cause" under Fed.R.Crim.P. 23(b) exists to excuse a juror is a matter within the discretion of the district court, and approving of district court's in chambers discussion with juror who refused to deliberate); *United States v. Reed*, 167 F.3d 984, 989 (6th Cir.1999) (noting that the district court has discretion to manage reported jury misconduct); *United States v. Shackelford*, 777 F.2d 1141, 1145 (6th Cir.1985) (noting that the district court has a duty to investigate juror misconduct, and has discretion in deciding the scope of the proceedings necessary to discover the misconduct).

Under the circumstances of this case, the district court did not err in failing to declare a mistrial *sua sponte* or in denying Dr. Bhat's motion to reconvene the jury without direct questioning of Ms. Marrow.

## B. Denial of Plaintiff's First Motion for A Mistrial

■■■ Next, Dr. Bhat argues that the district court erred in denying her motion for a mistrial after the court spoke to Ms. Marrow in chambers. We review for an abuse of discretion the district court's denial of Dr. Bhat's motion for a mistrial.

*See Grossheim v. Freightliner Corp.*, 974 F.2d 745, 752 (6th Cir.1992). An "abuse of discretion" will be found if the reviewing court has "a definite and firm conviction that the trial court committed a clear error of judgment." *United States v. Mack*, 159 F.3d 208, 215 (6th Cir.1998).

■■■ Dr. Bhat places a good deal of emphasis, as she did in the court below, on Ms. Marrow's statements regarding the pressure she felt from her fellow jurors to make a decision. The dialogue between the court and Ms. Marrow in chambers, set forth above, reveals that the district court was interested in determining whether Ms. Marrow was able to understand and apply the law and the court's instructions. Ms. Marrow's statements regarding the jury's deliberative process were unsolicited and serve mainly to cloud the issue. As the district court noted, the jury dynamics were nothing out of the ordinary, and cannot be used here to serve as a reason to find error in the district court's decision. *See, e.g., United States v. Knight*, 58 F.3d 393, 396 (8th Cir.1995) (noting that "difficult, one-sided debate in the jury room does not require a mistrial"); *United States v. Dorsey*, 865 F.2d 1275, 1279 (D.C.Cir.1989) (stating that "individual jurors have no right to be released or relieved from their colleagues' efforts at persuasion"); *cf.* Fed.R.Evid. 606(b).[5]

Dr. Bhat argues that the district court "overstepped its bounds" when it asked

---

**4.** Rule 47(c) of the Federal Rules of Civil Procedure allows a judge to excuse a juror from service during deliberation for good cause.

**5.** Federal Rule of Evidence 606(b) states as follows:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influenc-

ing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

Ms. Marrow whether she understood the burden of proof. Dr. Bhat suggests that this inquiry by the district court "implied that [Dr. Bhat] had not met her burden." Appellant's Br. at 21. We find no support for Dr. Bhat's contention in the record. The district court was asking Ms. Marrow a series of questions designed to reveal whether Ms. Marrow was capable of following the court's instructions.

Finally, Dr. Bhat contends that the district court committed reversible error in giving Ms. Marrow "what equated to a partial *Allen* charge." Appellant's Br. at 21. Dr. Bhat argues that the court's statement was unduly coercive because the court failed to remind Ms. Marrow that she should not surrender her honest beliefs simply because the other jurors disagreed. Dr. Bhat suggests that this Court's decision in *United States v. Scott,* 547 F.2d 334 (6th Cir.1977) supports her contention. In *Scott,* we held that an *Allen* charge given by the district court was unduly coercive for several reasons. We noted that the charge "both omitted necessary limitations and included additional comments which probably heightened the coercive effect." *Id.* at 337. The statement did not include a "reminder that no juror should merely acquiesce in the majority opinion," and included remarks that "could be understood by the jury as an admonishment to reach a verdict ... for the sake of a harried judge and long-suffering civil parties." *Id.* Finally, we noted that the jury, which had deliberated for eight and one-half hours, achieved unanimity in only fourteen minutes after the *Allen* charge. *See id.*

In looking at the district court's statements to Ms. Marrow as a whole, we cannot say that the trial court committed a clear error of judgment. After determining that the jury was not at an impasse, the court asked Ms. Marrow to continue deliberations until the jury either reached a verdict, or the jury was satisfied that it could not. While the district court included some of the language of the court's modified *Allen* charge, the court merely asked that Ms. Marrow continue deliberating. The statements made to Ms. Marrow had none of the coercive features that were present in *Scott.* The fact that Ms. Marrow went back to the jury room after her discussion with the court and continued to hold-out on interrogatories 6 and 8 further evidences the non-coercive effect of the court's statements.

Dr. Bhat argues that the fact that Ms. Marrow "changed her mind on interrogatories 1–5, 7, and 9" only eight minutes after the "partial Allen charge" demonstrates that the district court's statements were coercive. Appellant's Br. at 25. However, there is no indication in the record that Ms. Marrow "changed her mind" on any interrogatory after her discussion with the court. Ms. Marrow stated initially that she had agreed with her fellow jurors on some, but not all, of the interrogatories. (J.A. at 241). Although not clear, the record indicates that Ms. Marrow maintained her original position following her discussion in chambers.

Viewing the court's discussion with Ms. Marrow as a whole, we cannot say that the court abused its discretion in failing to grant Dr. Bhat's motion for a mistrial.

## C. The *Allen* Charge

 We review the district court's decision to give the modified *Allen* charge under an abuse of discretion standard. *See United States v. Reed,* 167 F.3d 984, 989 (6th Cir.1999). The totality of the circumstances in which the *Allen* charge was given must be examined to determine whether the charge was coercive. *See id.* " 'In deciding at what point further deliberations by a particular jury would be fruitless or unduly coercive, the trial judge

has wide discretion.'" *King v. Ford Motor Co.*, 209 F.3d 886, 895 (6th Cir.2000) (quoting *United States v. Stevens*, 177 F.3d 579, 583 (6th Cir.1999)).

█ Dr. Bhat contends that the district court abused its discretion by giving the jury an *Allen* charge when the jury knew that the court was aware of the identity of the dissenting juror. Dr. Bhat argues that Ms. Marrow must have assumed that the supplemental instruction was being leveled at her, and that the court was urging her to reconsider her vote. Dr. Bhat suggests that the *Allen* charge was particularly coercive here because Ms. Marrow had told the court that her mind might be changed, while the minds of her fellow jurors could not.

In *Brasfield v. United States*, 272 U.S. 448, 450, 47 S.Ct. 135, 71 L.Ed. 345 (1926), the Supreme Court held that it is reversible error for a federal trial judge to give an *Allen* charge after having inquired as to the division of the jury. We have held that the trial court's mere knowledge of the jury's numerical split is not dispositive under *Brasfield* if the information was volunteered by the jury, but that it is incumbent on the court, in such a case, to instruct both sides to reconsider their positions. *See United States v. Reed*, 167 F.3d 984, 991 (6th Cir.1999); *United States v. Lash*, 937 F.2d 1077, 1086 (6th Cir.1991).

In the instant case, the judge learned inadvertently of the numerical split during polling, as Ms. Marrow happened to be the final juror polled. Moreover, Ms. Marrow's statements regarding what she believed to be the positions of her fellow jurors were unsolicited by the court, and were not necessarily accurate. Although the district court was aware that Ms. Marrow was the lone hold-out, it was within the district court's discretion to give a properly worded *Allen* charge. *See Reed*, 167 F.3d at 991.

Dr. Bhat approved of the language of the supplemental instruction, and does not dispute that the *Allen* charge given by the district court below was properly worded. The instruction was even-handed, and did not single out Ms. Marrow. Rather, the instruction reminded all the jurors that they should deliberate with an open mind, and that no one was required to give up an honestly held belief. It in no way suggested that a verdict was necessary, nor did it suggest that the jurors should surrender conscientious positions in light of the views of other jurors. The court made clear that the charge was leveled at all the jurors when it indicated that the court had already discussed the issue with Ms. Marrow. Ms. Marrow might well have felt support in the district court's statements to her fellow jurors that she had a right not to give up her honestly held beliefs.

Dr. Bhat contends that, under the totality of the circumstances, the district court erred in denying her motion for mistrial. Dr. Bhat suggests that "[i]t is difficult to imagine a more coercive set of circumstances than existed when the District Court, over the objection of counsel, issued the Allen charge to the entire jury in the instant case." Appellant's Br. at 29. In support of this contention, Dr. Bhat essentially recounts, as we have above, the events leading up to the *Allen* charge.

Our review of the circumstances of the *Allen* charge leads us to conclude that, while the district court's actions may not have been ideal, the court's issuance of the modified *Allen* charge was not coercive. Our conclusion is supported by Ms. Marrow's conduct following the *Allen* charge. Despite the court's explicit indication that it would discharge the jury if the jury could not return a verdict within a reasonable time, the jury continued to deliberate well over an hour. Moreover, Ms. Marrow did not indicate that she compromised her

views in order to reach a verdict, nor did she disagree with the verdict upon polling. Dr. Bhat's failure to move for a mistrial after the jury was polled the second time or after the jury was dismissed is further indication that Ms. Marrow's decision was clearly her own.

Under the unique set of facts of this case, we find that the district court's actions were proper.

### III. CONCLUSION

For the foregoing reasons, the order of the Honorable Sandra S. Beckwith of the United States District Court for the Southern District of Ohio is hereby **AFFIRMED**.