NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0470n.06
Filed: July 2, 2007

Case No. 05-1939; 05-1954

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| LEON WALTERS; | ) | DISTRICT OF MICHIGAN |
| GREGORY JOHNSON, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |
| ———————————————— | ) | |
| | ) | |

BEFORE:  MERRITT, BATCHELDER, Circuit Judges; and GWIN, District Judge.[*]

   **ALICE M. BATCHELDER, Circuit Judge.**  These consolidated appeals arise out of the March 2, 2005, jury convictions of defendant-appellant, Gregory Johnson ("Johnson"), on two counts of bank robbery and three counts of witness tampering; and of defendant-appellant, Leon Walters ("Walters"), on one count of bank robbery.  Johnson challenges his conviction, contending that the trial court erred by failing to hold a pretrial evidentiary hearing regarding Johnson's challenges to the photographic identifications made by two co-defendants, and by admitting into evidence a surveillance photograph of Johnson taken during an uncharged bank robbery.  Walters challenges his sentence, arguing that the district court failed to articulate its reasoning sufficiently.

———————————————

   [*]The Honorable James Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

Because the district court did not abuse its discretion in denying Johnson's evidentiary challenges, and because the court adequately articulated its reasons for imposing a reasonable sentence in Walters's case, we affirm.

## I.

### A. June 13, 2003 Robbery

On June 13, 2003, Johnson and William Askew ("Askew"), robbed the National City Bank in Monroe, Michigan, using a getaway car driven by Christina Mayhue ("Mayhue"). Johnson, also known by his accomplices as "G" and "Unc," masterminded the robbery, recruited the team, and instructed Askew on the layout of bank drawers, including the location of dye packs and currency. On the day of the robbery, Johnson and Askew picked up Mayhue and drove to the National City Bank in Monroe. Johnson donned sunglasses and a baseball cap with attached synthetic dreadlocks, and Askew put on sunglasses and a cap. Thus disguised, the men entered the bank. Askew immediately vaulted over the counter and yelled for tellers to open their second drawers, from which he then took $34,591. A few seconds later, Johnson shouted "time, time!" and the two ran out of the bank, jumped into the open trunk of the getaway car, and Mayhue drove off.

### B. July 16, 2003 Robbery

On July 16, 2003, Johnson, his friend Leon Walters, Mayhue, and her friend Phillip Calloway ("Calloway"), robbed a TCF Bank in Ann Arbor, Michigan, of $17,527. On the day of the robbery, the four drove to Amber McGowan's home, where Mayhue was also living. There, Johnson planned the robbery and instructed the others in their respective roles. Johnson explained that Mayhue, Calloway, and Walters would ride to the bank in Walters' blue Lincoln, and that Johnson would drive separately in McGowan's white Taurus so that he could watch the bank from a different

2

vantage point and intercept police. At the bank, Walters was to put on a cap with fake braids and Calloway a cap and sunglasses. Wearing these disguises, they were to enter the bank, announce the robbery, jump the teller counter, grab as much money as possible, and leave within 25 seconds of entering. Walters and Calloway were to return to the getaway car — to be driven by Mayhue — jump into the trunk, and drive off.

The robbery was executed according to plan. While returning to the rendevous point, however, the car was stopped by the Ann Arbor police, who had heard a dispatch about the robbery. Officer Peter Stipe intercepted the "dark colored Lincoln" that had been reported as being used in the robbery, but because the dispatch advised that the getaway driver was a black woman — Mayhue is not black — and did not mention that the two male robbers might be in the trunk, Officer Stipe concluded that he had stopped the wrong car. Before letting Mayhue go, however, Officer Stipe recorded the Lincoln's license plate number; further investigation revealed that the car was registered to Alberta Jean Williams — Walters' "God auntie." Police later learned that the car belonged to Walters, but that it was registered in Ms. Williams's name because Walters had outstanding tickets and did not have a driver's license.

On the evening of the July 16, 2003, robbery of the TCF Bank, police observed Calloway with a large quantity of United States currency. Subsequent investigation by the Federal Bureau of Investigation led to the filing of a criminal complaint against Johnson, and the indictment of Johnson and Calloway on charges of bank robbery, in violation of 18 U.S.C. § 2113 — Johnson on two counts and Calloway on one. In a series of superceding indictments, Walters, Mayhue, and Askew were added as defendants and charged with bank robbery. In the final superceding indictment, Johnson was also charged with witness tampering. Johnson and Walters pled not guilty and went

3

to trial. Calloway, Mayhue and Askew all pled guilty, and testified at that trial. Johnson was convicted on all counts of the indictment — two counts of bank robbery and three counts of witness tampering — and sentenced to 262 months' incarceration, three years' supervised release, a special assessment of $500, and restitution in the amount of $49,018. Walters was convicted on one count of bank robbery, and sentenced to 210 months' incarceration followed by three years of supervised release, restitution in the amount of $14,427, and a special assessment of $100. These timely appeals followed, in which Johnson appeals only his convictions on the two counts of bank robbery and Walters appeals only his sentence.

## II.

On March 1, 2004, Johnson filed a motion for an evidentiary hearing and a motion to suppress the results of a photo lineup and co-defendant Askew's identification testimony. Johnson argued that his attorney should have been present when Askew identified a photo of Johnson at Askew's post-arrest interview, and that the photo lineup was unduly suggestive. The Government responded that it had asked Askew only to identify the surveillance photograph from the June 13, 2003, robbery, in which Askew and Johnson together entered and robbed the bank, and that there was no legal authority for the idea that a suggestive photo lineup taints a defendant's identification of his co-defendants.

On June 7, 2004, Johnson moved to suppress the photo lineup results and identification testimony of co-defendant Calloway, claiming that the lineup was overly suggestive. The Government responded that because Calloway had participated in the robbery, the authority regarding suggestive lineups did not apply. Moreover, at the September 23, 2004, hearing, the

4

Government noted that Calloway had been shown a number of photos of people known by the police to use the nickname "G," and had picked out Johnson from among those photos.

At the motion hearing, the Government stated that it did not intend to rely upon any out-of-court identification and that it intended to lay independent bases for Askew and Callow to identify Johnson, but if Johnson challenged Calloway's in-court identification, the government would seek admission of Calloway's out-of court identifications. The district court advised the parties that the validity of the in-court identifications could be determined at trial, and that defense counsel could cross-examine Askew and Calloway regarding whether their in-court identifications were the result of the photo lineups. After warning defense counsel that raising the suggestive photo lineup as a basis for a challenge to the in-court identifications might result in the admission of the photo identification as a prior consistent statement or substantive evidence, the court denied Johnson's motions with the proviso that defense counsel would be permitted to raise them again at trial.

**III.**

**A. THE PHOTOGRAPHIC IDENTIFICATIONS MADE BY ASKEW AND CALLOWAY**

We review for abuse of discretion a district court's refusal to hold an evidentiary hearing. *United States v. Brika*, 416 F.3d 514, 529 (6th Cir. 2005). Johnson contends that we must review Sixth Amendment evidentiary rulings *de novo*. However, the issue on appeal is not whether the photographic evidence was improperly admitted into evidence; the question, as even Johnson has framed it, is whether the court should have held an evidentiary hearing on Johnson's challenge to that evidence. Therefore, the abuse-of-discretion standard is appropriate.

Johnson argues, citing *United States v. Wade*, 388 U.S. 218, 237 (1967), that the Sixth Amendment requires the assistance of counsel at a post-indictment photo lineup; that *Manson v.*

5

*Brathwaite*, 432 U.S. 98 (1977) requires that the Sixth Amendment right to a fair identification procedure monitored by counsel applies to photo identification procedures; and, citing *Pointer v. Texas*, 380 U.S. 400 (1965), that if the in-court identification was the fruit of a suspect out-of-court identification, then the defendant has been deprived of his right to confront the witnesses against him. Johnson also contends that the "fair identification procedure" is a matter of due process under the Fifth Amendment, citing *Stovall v. Denno*, 388 U.S. 293 (1967). He notes that each case must be examined under the totality of the circumstances to determine if a suggestive police procedure resulted in a false or coerced identification.

Johnson is correct that defective photo lineups can infringe upon a defendant's Fifth and Sixth Amendment rights. He is not correct that any such infringement has occurred here. The Supreme Court has described the harm that defective photo arrays may cause and the need for the exclusionary protections:

> It is, first of all, apparent that the primary evil to be avoided is "a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S., at 384, 88 S.Ct., at 971. While the phrase was coined as a standard for determining whether an in-court identification would be admissible in the wake of a suggestive out-of-court identification, with the deletion of 'irreparable' it serves equally well as a standard for the admissibility of testimony concerning the out-of-court identification itself. It is the likelihood of misidentification which violates a defendant's right to due process, and it is this which was the basis of the exclusion of evidence in *Foster*. Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous. But as *Stovall* makes clear, the admission of evidence of a showup without more does not violate due process.

*Neil v. Biggers*, 409 U.S. 188, 198 (1972). In Johnson's case, there was almost no risk or likelihood of misidentification. Askew and Calloway were being asked to identify their own partner in crime with whom they had just been working. While showing a bank surveillance or booking photograph

6

of a defendant to an ordinary witness may be suggestive and increase the risk of a false-positive identification, here, the surveillance photo shown to Askew captured Johnson in his "disguise" as he and Askew were in the process of robbing the bank. The bank photograph did not present any likelihood of misidentification, let alone a substantial likelihood. Similarly, both Askew and Calloway, having each participated with Johnson in robbing a bank, knew what Johnson looked like, and they were unlikely to misidentify him when shown the photo array. Furthermore, even without the out-of-court identification, Askew and Calloway had significant independent bases for their in-court identifications of Johnson inasmuch as they were his accomplices.

Finally, the district court rightly noted that Johnson's defense counsel would have the opportunity to cross-examine the witnesses, and that a pre-trial evidentiary hearing was unnecessary under the circumstances.

## B. THE PHOTOGRAPH OF JOHNSON TAKEN DURING AN UNCHARGED BANK ROBBERY

Prior to trial, the Government filed notice of its intent to introduce, as proof of plan and identity under Federal Rule of Evidence 404(b), evidence from a June 10, 2003, robbery of an Ohio bank, although Johnson had never been charged with this robbery. Johnson's counsel received the Government's 404(b) notice, but failed to file a response prior to trial.

At trial, the Government presented evidence of an Ohio bank robbery that occurred on June 10, 2003, and introduced "GX 13" — a bank surveillance photograph of the bank robber wearing dreadlocks, a baseball cap, sunglasses, and a hooded sweatshirt. The GX 13 photo was subsequently identified by Askew and Mayhue as a picture of Johnson. Johnson's counsel objected to the admission of the photo, but the district court admitted it and instructed the jury that the exhibit was admissible only for the limited purpose of establishing identity pursuant to Rule 404(b). On appeal,

7

Johnson argues that the photo should have been excluded under Federal Rule of Evidence 403 because the danger of unfair prejudice substantially outweighed its probative value. We review a district court's Rule 403 determination for abuse of discretion. *United States v. Sassanelli*, 118 F.3d 495, 498 (6th Cir. 1997).

Rule 404(b) provides that evidence of other crimes is not admissible to prove action in conformity with the person's character, but that such evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Here, Johnson denied robbing the banks as charged in the indictment. The government's evidence demonstrated that one of the bank robberies for which Johnson was being tried — the National City Bank in Monroe, Michigan — had been committed by an individual wearing dreadlocks and a baseball cap. Government witnesses identified the person in the photograph taken during the uncharged robbery, also wearing dreadlocks and a baseball cap, as Johnson. The district court clearly did not abuse its discretion in admitting the GX 13 photograph to show Johnson's identity.

Johnson also alleges that the probative value of the photograph was substantially outweighed by the danger of unfair prejudice its admission would create because the photo presented an "inevitable inference" that he was a serial bank robber who likely committed the robberies charged in the instant case. Although the Government has argued this point poorly on appeal, it is clear from the record that the photograph was highly probative of Johnson's identity as it showed him wearing the same disguise the Government alleged that he wore to rob the National City Bank in Monroe. Johnson has not explained how the prejudice of the "inevitable inference" — if indeed such an inference is inevitable — substantially outweighs the probative value of the photograph, and we do

8

not believe that it does. The district court did not abuse its discretion in admitting the photo with the limiting instruction that the jury consider it only for establishing Johnson's identity.

## C. WALTERS'S SENTENCE

Defendant-appellant, Leon Walters, appeals only his sentence, arguing that the district court failed to articulate its reasoning and its consideration of the sentencing factors in 18 U.S.C. § 3553(a). According to Walters, the court made only a general statement that it had considered "all of the factors" in § 3553(a). As we have repeatedly held, a sentencing court "need not recite these [§ 3553(a)] factors but must articulate its reasoning in deciding to impose a sentence in order to allow for reasonable appellate review." *United States v. Kirby,* 418 F.3d 621, 626 (6th Cir. 2005).

It is clear from the record that the court both acknowledged that it needed to consider the § 3553 factors and expressly considered a number of them. The district court examined Walters's criminal record; noting that Walters was not yet 30 years old and already had five convictions for serious crimes, and that his criminal record is symptomatic of a longstanding substance abuse problem, the court recommended that Walters be put into both a substance abuse treatment program and vocational training. The record reflects that the court considered the defendant's personal characteristics and history, the gravity of the offense, the need for deterrence, and Walters's need for treatment, training, and rehabilitation. Contrary to Walters's contention, we find that the district court did consider the § 3553(a) factors and adequately articulated its reasons for imposing Walters's sentence. Furthermore, we find — although Walters has not explicitly raised the point — that the sentence is reasonable.

## CONCLUSION

9

For the foregoing reasons, we **AFFIRM** both Defendant JOHNSON's conviction, and Defendant WALTERS'S sentence.